FILED
07 APR -2 PM 3: 43

U.S.
BANKRUPTCY COURT

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re | ) |
| | ) **JUDGE RICHARD L. SPEER** |
| Michelle C. Morrow | ) |
| | ) Case No. 06-3107 |
| Debtor(s) | ) |
| | ) (Related Case: 05-76172) |
| Michelle C. Morrow | ) |
| | ) |
| Plaintiff(s) | ) |
| | ) |
| v. | ) |
| | ) |
| United States Dept. of Education | ) |
| | ) |
| Defendant(s) | ) |

## MEMORANDUM OPINION AND DECISION

This matter comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine Dischargeability of Debt. At the conclusion of the Trial, the Court took the matter under advisement. At issue at the Trial was whether the Debtor was entitled to receive a discharge, of those obligations she incurred to finance her higher education, pursuant to the "undue hardship" standard set forth in 11 U.S.C. §523(a)(8). The Court has now had the opportunity to review the applicable law, the evidence presented, as well as the arguments made by the Parties' respective legal counsel. Based upon this review, the Court, for the reasons herein stated, declines to grant the relief requested by the Debtor.

Michelle Morrow v. United States Department of Education
Case No. 06-3107

## FACTS

On February 13, 2006, the Plaintiff/Debtor, Michelle C. Morrow, brought this adversary proceeding against the United States Department of Education ("DOE") seeking a hardship discharge of her student-loan obligation pursuant to 11 U.S.C. § 523(a)(8). For purposes of this opinion, the Parties stipulated that as of May 6, 2006, the Debtor owed the DOE the sum of $5,536.17. Since the loan became due, the Debtor has been credited in the amount of $6,412.34, consisting of Treasury offsets of $2,858.70 and wage garnishments of $3,553.64.

On October 10, 2005, the Debtor filed a voluntary petition in this Court for relief under Chapter 7 of the Bankruptcy Code. Included in her petition were those obligations the Debtor incurred to finance her higher education at the University of Toledo, from which she withdrew after two years, prior to obtaining a degree.

The Debtor is a single woman, 27 years of age. Within her charge are two minor children, ages 5 and 6. The Debtor testified that for the children she receives public assistance in the amount of $545.00 per month.

At the present time, the Debtor is employed part-time at Sam's Wholesale Club ("Sam's Club"), where she has worked intermittently for a period of five years. From her employment, she earns a net income of approximately $800.00 per month. She has recently returned to Sam's Club after being out of work due to a broken leg. The Debtor asserts that at least $300.00 of the monthly public assistance benefits she receives for the children will cease now that she has returned to work.

Set against her gross monthly income, the Debtor put forth that her necessary living expenses, which totaled approximately $1,000.00, exceed her income by about $200.00 per month. While not a complete list, itemized in this total were the following monthly expenditures: $400.00 rent;

Page 2

Michelle Morrow v. United States Department of Education
Case No. 06-3107

$100.00 utilities; $60.00 insurance; $150.00 food; $200.00 day care; $50.00 clothing; and $100.00 gas.

In seeking to have her student loans discharged, the substance of the Debtor's position centers on these two medical conditions: a previously broken leg and asthma. According to the Debtor, she is currently receiving physical therapy for her leg and takes medication for her asthma.

## LAW

11 U.S.C. § 523. Exceptions to Discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

## DISCUSSION

As brought in her complaint, before this Court is the issue of whether, in contrast to the general rule, the Debtor is entitled to receive a discharge of her student-loan obligations. Pursuant to 28 U.S.C. § 157(b)(2)(I), this matter is deemed a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. § 1334.

06-03107-rls    Doc 28    FILED 04/02/07    ENTERED 04/02/07 16:11:08    Page 3 of 10

Michelle Morrow v. United States Department of Education
Case No. 06-3107

Beginning in 1976, the Congress of the United States, based upon various policy concerns – e.g., perceived abuses and concerns for the insolvency of the student-loan program – determined that those loans incurred by a debtor to finance a higher education should be excluded from the scope of a general bankruptcy discharge. In enacting this exception to discharge, however, Congress recognized that some student-loan debtors were still deserving of the fresh-start policy provided for by the Bankruptcy Code. As a result, Congress provided that a debtor could still be discharged from educational loans if it were established that excepting the obligations from discharge would impose an "undue hardship" upon the debtor and the debtor's dependents. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 196 (Bankr.N.D.Ohio 2000).

In determining whether a debtor has met the "undue hardship" standard of § 523(a)(8), the Sixth Circuit Court of Appeals adopted, in *Oyler v. Educational Management Credit Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005), the three-part test set forth in *Brunner v. New York State Higher Educ. Serv. Corp.*:

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans;
>
> (3) That the debtor has made good faith efforts to repay the loans.

831 F.2d 395, 396 (2nd Cir. 1987). For these elements, the evidentiary burden is placed upon the debtor to establish the existence of each by at least a preponderance of the evidence. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R.236, 242 (Bankr. N.D.Ohio 2003). For this purpose, the first prong of the Brunner Test is not in controversy; the DOE did not contest the Debtor's enumerated income and expenses, which reveal that the Debtor struggles to provide for life's basic necessities.

Page 4

Therefore, the Debtor has satisfied her burden under the first prong of the Brunner Test, and thus, the Court will focus on the second and third prongs of this test.

The second prong of the Brunner Test requires a showing that there exists additional circumstances which show that the debtor's financially distressed state of affairs will persist for a significant part of the repayment period. *Mitchell v. U.S. Dept. Education (In re Mitchell)*, 210 B.R. 105, 108 (Bankr.N.D.Ohio 1996). This element implements the underlying purpose of the "undue hardship" standard of § 523(a)(8): to ensure that the financial hardship the debtor is experiencing is actually "undue," as opposed to the garden-variety financial hardship which, by definition, all debtors who seek bankruptcy relief experience. *Lowe v. ECMC (In re Lowe)*, 321 B.R. 852 (Bankr. N.D.Ohio 2004); *see* 11 U.S.C. § 707(b) (requiring dismissal of case for abuse).

Responding to the second prong of the Brunner Test, the Sixth Circuit, in *In re Oyler*, held, regarding a debtor's showing of additional circumstances connoting persistent financial hardship:

> Such circumstances must be indicative of a certainty of hopelessness, not merely a present inability to fulfill financial commitment. They may include illness, disability, a lack of useable job skills, or the existence of a large number of dependents. And, most importantly, they must be beyond the debtor's control, not borne of free choice. Choosing a low-paying job cannot merit undue hardship relief.

397 F.3d at 386 (internal citation and quotation omitted). In arguing for her compliance with this requirement, the Debtor asserts that she suffers from medical conditions that prevent her from working full-time and thereby making enough money to repay her loans to the DOE. Specifically, the Debtor points to a previously broken leg and an asthma condition as weighing heavily on her ability to be employed on a full-time basis.

Page 5

Michelle Morrow v. United States Department of Education
Case No. 06-3107

A debilitating medical condition, regardless of whether it is physical or mental in origin, commonly forms the basis of an "undue hardship" analysis. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 445 (Bankr. N.D.Ohio 2003). All the same, the mere existence of a medical condition, no matter the severity, is insufficient to form the basis of "undue hardship" discharge. Instead, a strong nexus between the medical condition and its adverse effect on the debtor's terms of employment (specifically, a debtor's income) must be shown. *Swinney v. Academic Financial Servs. (In re Swinney)*, 266 B.R. 800, 805 (Bankr.N.D.Ohio 2001).

As previously explained and set forth by this Court in *In re Lowe*:

> To establish a nexus, mere speculation will not suffice; for everyone, there exists a possibility that a medical condition will arise that will adversely affect a person's terms of employment. Rather, a debtor must come forth with evidence showing that they presently have a medical condition sufficiently debilitating to affect their ability to maintain employment, and that such a condition is unlikely to improve. As an evidentiary matter, however, before a medical condition may form the basis of an "undue hardship" analysis, some corroborating evidence must be introduced to substantiate the debtor's position; an averment as to his or her medical condition by a debtor, standing alone, is insufficient.

321 B.R. at 859 (internal citation and quotation omitted). Contrary to this standard, the Court does not have before it any evidence that the Debtor's conditions are either permanent or that they prevent her from seeking full-time employment.

First, while a broken leg could possibly cause a long-term debilitation, it is, more often than not, a condition from which one recovers. Therefore, to form the basis of a debilitating medical condition, strong corroborating evidence must be offered. However, the Debtor presented no evidence that she sustained permanent injury from the incident that resulted in her broken leg. This is further supported by her having already returned to work. The analysis surrounding the Debtor's asthma condition is for all practical purposes the same.

Page 6

Michelle Morrow v. United States Department of Education
Case No. 06-3107

Asthma is often a permanent condition; however, the severity of the condition can vary considerably from person to person. Absent evidence of the severity, treatment, or medications that she has been prescribed, this Court must assume that the Debtor's asthma condition does not preclude her from working full-time. Consequently, without any substantive evidence to corroborate the Debtor's testimony regarding her medical conditions, the Court must find that the Debtor has failed to sustain her burden the second prong of the Brunner Test.

But even if, assuming arguendo, the Debtor had satisfied the requirements of the second prong of the Brunner Test, she fails to meet her burden under the third prong. The third and final prong of the Brunner Test asks whether the debtor has made a good faith effort to repay the loans. As would be expected, of primary importance in any analysis under this standard is whether and the extent to which the debtor has made any payments on their student-loan obligations. *See England v. United States of America (In re England)*, 264 B.R. 38 (Bankr.D.Idaho 2001) ("a debtor's efforts to deal with unpaid student loans is critical to showing good faith."). In this case, although the DOE acknowledged that it has procured some remuneration from the Debtor, it takes the position that such payments were not voluntary, and thus should not be factored into any good faith analysis.

In line with the DOE's position, this Court has made a distinction between voluntary and involuntary payments, with the latter not bearing favorably on a good faith analysis. *Bruen v. United States (In re Bruen)*, 276 B.R. 837, 842 (Bankr.N.D.Ohio 2001); *Boyd v. U.S. Dep't of Educ. (In re Boyd)*, 254 B.R. at 404 (Bankr.N.D.Ohio 2000). Typically, in the student-loan situation, an involuntary payment will arise as the result of a creditor intercepting a debtor's tax refund, or, as occurs in other situations, by the creditor garnishing the debtor's wages. That is precisely what occurred in this case, the only funds the DOE procured from the Debtor were through Treasury offsets and wage garnishments. A voluntary payment envisions a payment made by a debtor completely on their own accord. The payments in this case, forced procurements of the Debtor's money, hardly constitute a voluntary act for purposes of Brunner's good faith requirement.

Page 7

Michelle Morrow v. United States Department of Education
Case No. 06-3107

Still, "good faith," is an amorphous concept, being largely defined by factual inquiry. As such, payment (or the lack thereof) on the student-loan obligation is not always dispositive of the issue, with other considerations possibly coming into the equation. Here, the Debtor argues, in favor of a finding of good faith, that she has made an effort to negotiate a plan to repay her loans with the DOE. The Debtor claims, however, that the least the DOE would accept was $300.00 per month, still beyond the limits of what she could afford. But even accepting the Debtor's assertion at face value, the Court, has the same problem as before: the contact was initiated by a collection agency, and was not of the Debtor's own volition.

Furthermore, this Court notes the fact that the Debtor did not first attempt to participate in the Income Contingent Repayment Program which bases repayment on income. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 244 (Bankr.N.D.Ohio 2003) (discussing the income contingent repayment program). While participation in the repayment program is not an absolute prerequisite, its equitable manner of handling student-loan obligations means that a debtor who fails to pursue payment options under the program bears a heavy burden to show that they have acted in good faith as applied to the third prong of the Brunner Test. *Storey v. National Enterprise System (In re Storey)*, 312 B.R. 867; *See also Tirch v. Pennsylvania Higher Education Assistance Agency (In re Tirch)*, 409 F.3d 677 (6th Cir. 2005) (stating that the income contingent repayment program is probative of an intent to repay loans).

In the final analysis then, since the Debtor failed to make any voluntary payments on her loan obligations, or make a good faith effort to negotiate a payment plan, it is the finding of this Court that the Debtor has failed to sustain her burden under the third prong of the Brunner Test. Consequently, for this reason, together with her failure to sustain her burden under the second prong of the Brunner Test, the Debtor is not entitled to an "undue hardship" discharge of her student-loan debts.

Page 8

Michelle Morrow v. United States Department of Education
Case No. 06-3107

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(8), those educational obligations held by the Defendant, the United States Department of Education, against the Plaintiff/Debtor, Michelle C. Morrow, be, and are hereby, determined to be NONDISCHARGEABLE DEBTS.

It is **FURTHER ORDERED** that this case, be, and is hereby, DISMISSED.

Dated: April 2, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

# *CERTIFICATE OF SERVICE*

Copies were mailed this 2nd day of April, 2007, to the following parties:

Michelle C Morrow
6201 Garden Rd
#G-126
Maumee, OH 43537

Daniel H Grna
PO Box 1686
709 Madison Ave, #209
Toledo, OH 43603

US Department of Education
PO Box 4222
Iowa City, IA 52244

Gregory White
United States Attorney
Four Seagate, #308
Toledo, OH 43604

Office of the U.S. Trustee
U.S. Courthouse
201 Superior Ave, East
#441
Cleveland, OH 44114


/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court